UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-4695-CAS (RCx) | | Date | November 19, 2012 |
|---|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Sheri Kleeger | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Martin Stanley | Richard Arias |
| Gilbert Geilim | |

Proceedings:    **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

**DEFENDANT'S MOTION FOR A NEW TRIAL AND JUDGMENT AS A MATTER OF LAW** (filed October 22, 2012)

## I.    INTRODUCTION

On April 14, 2010, plaintiff Valerie Allen filed the instant suit in the Los Angeles County Superior Court against the County of Los Angeles, the Los Angeles Police Department, Officer Nam Phan, Officer Brent Houlihan, Officer Joesph Bezak, and Does 1 through 100 (collectively "defendants"). Defendants timely removed the action to this Court on June 24, 2010. Dkt. No. 1. Thereafter, on July 9, 2010, plaintiff filed her first amended complaint ("FAC"). Dkt. No. 5. The gravamen of plaintiff's FAC is that Officers Phan, Houlihan, and Bezak violated her civil rights by using excessive and unreasonable force against her.

A bifurcated jury trial was held on September 18–21 and 24–28, 2012. On September 21, 2012, Phase 1 of the bifurcated trial came to a close. After deliberating for three days, on September 27, 2012, the jury reached the following verdict set forth in relevant part below:

**QUESTION NO. 1**
Do you find by a preponderance of the evidence that defendants used excessive force against plaintiff Valerie Allen?

Joseph Bezak          Yes__X__   No____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

Nam H. Phan          Yes_____    No__X__
Brent Houlihan       Yes__X__    No_____

**QUESTION NO. 2**
Do you find by a preponderance of the evidence that defendants acted negligently and that their negligence was a substantial factor in causing plaintiff Valerie Allen's injuries?

Joseph Bezak         Yes_____    No__X__
Nam H. Phan          Yes_____    No__X__
Brent Houlihan       Yes__X__    No_____

**QUESTION NO. 3**
Do you find by a preponderance of the evidence that plaintiff Valerie Allen acted negligently and that her negligence was a substantial factor in causing her injury?

Yes__X__   No_____

**QUESTION NO. 4**
Do you find by a preponderance of the evidence that plaintiff's Orthopedist, Dr. Mashoof, acted negligently in performing surgery on plaintiff Valerie Allen and that such negligence was a substantial factor in causing her injury?

Yes_____    No__X__

**QUESTION NO. 5**
What percentage of responsibility for plaintiff Valerie Allen's injuries do you assign to:

        Joseph Bezak        __0%_____
        Nam H. Phan         __3%___
        Brent Houlihan      __90%__
        Valerie Allen       __7%___
        Dr. Mashoof         __0%___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

**QUESTION NO. 6**
What is the amount of damages, if any, that plaintiff Valerie Allen incurred as a result of defendant(s) conduct?

Economic Damages:      $ ____200,000____
Noneconomic Damages:  $ ____3,000,000___

**QUESTION NO. 7**
If you find that Officers Bezak, Phan, and/or Houlihan used excessive force against Plaintiff Valerie Allen, were the officer(s) conduct malicious, oppressive, or in reckless disregard of plaintiff Valerie Allen's constitutional rights?

Joseph Bezak          Yes__X__   No____
Nam H. Phan          Yes____     No__X__
Brent Houlihan        Yes__X__   No____

Dkt. No. 109.  Because the jury found that Officers Bezak and Houlihan's conduct was malicious, oppressive, or in reckless disregard of plaintiffs' constitutional rights, the Court proceeded to Phase II of the bifurcated trial on September 28, 2012.  After deliberating, the jury reached the following verdict stated in relevant part:

**QUESTION NO. 1**
What amount of punitive damages, if any, do you award against the defendant(s)?

Joseph Bezak          $_1,000___
Brent Houlihan        $_17,500_____

Dkt. No. 113.  On October 22, 2012, defendants filed a motion for judgment as a matter of law or alternatively for a new trial.  Dkt. No. 118.  Plaintiff filed a motion for attorneys fees on the same date.  Dkt. No. 121.  The parties filed their respective oppositions on October 29, 2012, Dkt. Nos. 124, 126, and replies on November 5, 2012, Dkt. Nos. 127, 128.  The Court held a hearing on November 19, 2012.  After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

## II.   BACKGROUND

On September 3, 2009, plaintiff Valerie Allen was walking near or around Franklin Avenue in Los Angeles, California, visibly disoriented and suffering from a serious manic episode due to her bipolar disorder.  The parties dispute much of what transpired next, but the jury's verdict demonstrates that it found the officers' testimony lacking in credibility and their acts to be unreasonable and malicious, based on reasonable inferences that arise from the demeanor of plaintiff and the testimony of third party witnesses, as discussed below.

Defendant's version of the incident is as follows.  First defendant notes that the whole incident took only three to four minutes, from the time plaintiff was first seen running on Mariposa Avenue by the police until shots were fired at 5108 Franklin Avenue.  When Officers Houlihan and Phan first came across plaintiff in their patrol car, Officer Houlihan testified that she pounded on the windows and ran towards a jogger with clenched fists.  As plaintiff ran away, the officers pursued her in their vehicle.  At some point, while being chased by the officers, plaintiff climbed a wrought iron fence and sprayed Officer Houlihan with water from a garden hose.

During the allegedly twenty second period beginning when the officers exited their patrol car and ending when shots were fired, plaintiff ran across the front yard of 5108 Franklin, then headed towards the back yard, then started quickly walking towards the officers to confront them.  See Defs.' Ex. 140 (police call log); Mot. at 4–5.[1]  In the last two or three seconds of this critical time period before shots were fired, Officer Houlihan ordered Officer Phan to deploy his taser, but before Officer Phan did so, plaintiff walked quickly towards Officer Phan and struck him with a wooden stake with all of her might. The blow knocked Officer Phan to the ground, at which point Officer Houlihan ordered plaintiff to drop the stake.  Plaintiff ignored him and raised the stake to strike Officer Phan again—but before she did so, Officer Houlihan shot plaintiff three times at close range.

---

[1] When the officers actually exited their patrol car in this sequence of events is entirely unclear from defendant's recounting of the facts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$O$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|---------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

After hearing the "shots fired" radio call requesting backup, Officer Bezak and his partner arrived. Despite being shot multiple times, plaintiff continued to resist their efforts to subdue her and handcuff her. Officer Bezak saw plaintiff splattering blood on herself and his fellow officers, in addition to plaintiff exacerbating her injuries by her continued struggling. Therefore, Officer Bezak tased plaintiff to immobilize her, but she still continued to struggle and only with the help of all three officers were they able to handcuff her, approximately seven to ten minutes after the shooting.

In response, plaintiff argues that the officers' testimony is rife with inconsistencies, contradictions, and material changes from their initial deposition testimony. In addition, although plaintiff's own recollection of that day's events is limited, she offered the testimony of Pamela Troumbly, the only independent percipient witness to that day's events, and expert medical testimony regarding her injuries.

Plaintiff notes that Officer Houlihan testified at his deposition that the entire chase took approximately "fifteen to twenty minutes," Decl. of Martin Stanley, Ex. A, Depo. of Brent Houlihan 78:9–14, whereas Officer Phan testified at his deposition that the encounter lasted five minutes. Id. Ex. B, Depo. of Officer Phan, 99:20–100:10. Plaintiff also disputes defendant's reliance on the call log to demonstrate how long the encounter took, particularly defendants' contention that the officers were only outside of their vehicle for twenty-two seconds at most. Opp'n at 7 (noting that Officer Phan did not testify as to where he was when he made the radio call). Plaintiff notes that Pamela Troumbly, who lived at the scene of the incident, thought the officers and plaintiff were "scuffling" in her front yard for far longer than twenty seconds. Id. at 6.[2]

Once plaintiff was confronted at 5108 Franklin, plaintiff disputed by way of cross-examination and impeachment at trial that she started walking quickly towards the officers.[3] Instead, Officer Phan began to walk towards plaintiff because he thought he

---

[2] Plaintiff argued at trial that the officers should have called a special mental health unit, as the officers knew she was likely suffering from some kind of mental illness once they encountered her.

[3] Plaintiff further notes that the address in question is actually 5052 Franklin, not 5108, where plaintiff was eventually shot by Officer Houlihan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

heard Officer Houlihan instructing him to "grab her."  Plaintiff disputes what kind of stake was actually used to strike Officer Phan, in addition to how hard plaintiff could have struck Officer Phan given the minimal evidence defendants presented of any injury that resulted from plaintiff's assault.  Moreover, plaintiff notes that it was impossible for her to conceal any other sort of weapon at the time of the incident.  As such, plaintiff disputed at trial whether Officer Houlihan could have reasonably feared for the life of his partner at any point during this encounter.  In addition, various other methods of non-lethal force remained available to defendants.  Plaintiff also notes that before shots were fired, Ms. Troumbly testified that she heard plaintiff state "please don't shoot me" several times.

After shots were fired, plaintiff disputes that she could have possibly struggled in the way defendants claim she did.  Dr. Braiker, for example, testified that it was impossible for plaintiff to move her left arm given the damage caused by the gunshot wounds.  As such, it was cruel and unnecessary for Officer Bezak to tase her while she was suffering from multiple gunshot wounds.  Finally, plaintiff notes that the officers waited a minute and forty seconds between shooting her and calling for an ambulance without explanation.  Plaintiff was thereafter taken into custody.

## III.  LEGAL STANDARD

### A.     Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 139, 149 (2000).  If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial.  Fed. R. Civ. P. 50(b).  It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment.  Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | | Date | November 19, 2012 |
|---|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | | |

evidence favorable to the moving party that the jury is not required to believe.  <u>Reeves</u>, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)).  In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Reeves</u>, 530 U.S. at 151 (citing Wright & Miller, <u>supra</u>, at 300).

**B.     Motion for a New Trial**

Federal Rule of Civil Procedure 59(a)(1) provides that a court may, after a jury trial, grant a new trial on all or some of the issues in a case for any reason for which a new trial has been previously granted in the federal courts.  The grounds which have been previously recognized for granting a new trial include a verdict that "is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 729 (9th Cir. 2007) (citations and quotations omitted).  In considering a Fed. R. Civ. P. 59 motion, the court may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." <u>Landes Const. Co., Inc. v. Royal Bank of Can.</u>, 833 F.2d 1365, 1372 (9th Cir. 1987) 1371-72.  The court should only grant a new trial if, without substituting its judgment for that of the jury, the court is firmly convinced that the jury made a mistake. <u>Id.</u> at 1372 (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2806, at 48-49 (1973)).  In addition, if a court finds that a jury's damages award is excessive, the court "may order[] a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)" proposed by the court. <u>Hetzel v. Prince William County</u>, 523 U.S. 208, 212 (1998) (per curiam) (quotations omitted).

**C.     Attorneys' Fees**

42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.  Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983) (internal quotations and citations omitted).  In applying the "special circumstances" exception, the Court focuses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

on two factors: (1) whether allowing attorneys' fees would further the purpose of the statute and (2) whether the balance of equities favors or disfavors the denial of fees. Gilbert v. City of Westminster, 177 F.3d 839, 870 (9th Cir. 1999).

Where a fee award is appropriate and available, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party and submitted affidavits." Gates v. Gomez, F.3d 525, 534-535 (9th Cir. 1995).

The Court has an independent duty to determine whether the hours and hourly rates submitted by the fee applicant are "reasonable," and to reach its own "lodestar" value, which is "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." Hensley, 461 U. S. at 433. "[L]odestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary" should be excluded. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). In Hensley, the Supreme Court set forth twelve factors that may be considered in determining both the lodestar value and the multiplier.[4] Id. at 430. However, the lodestar amount is "presumptively the reasonable fee amount," and should be adjusted upward or downward by a multiplier in "rare" or "exceptional" cases only. Van Gerwen, 214 F.3d at 1045.

---

[4] The twelve factors identified are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) whether accepting the case precluded the attorney from taking other work; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the  amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

## IV.   ANALYSIS

### A.   Motions for Judgment as a Matter of Law and for a New Trial

Defendants argue that judgment as a matter of law or alternatively a new trial is warranted for the following reasons.  First, because Officer Houlihan and Bezak acted reasonably in subduing and detaining plaintiff, they cannot be found liable under 42 U.S.C. § 1983 for using excessive force; in addition, both of these officers are entitled to qualified immunity, because neither of them violated clearly established law at the time of the incident.  Second, the medical evidence adduced in this case supports defendant's contention that Dr. Mashoof was contributorily negligent in causing plaintiff's injuries, contrary to the jury's verdict.  Third, Officer Houlihan's actions were not negligent under California law.  Fourth, the jury's special verdict is inconsistent with regard to Officers Phan and Bezak's liability for negligence and excessive force.  Fifth, the jury's punitive damages award is excessive and against the clear weight of the evidence.  Each argument is addressed in turn.

### 1.   Excessive Force and Qualified Immunity

Whether a police officer acts with excessive force in violation of a person's Fourth Amendment rights is judged against a standard of "objective reasonableness."  See Graham v. Connor, 490 U.S. 386, 395 (1989).  Even if an officer uses objectively unreasonable deadly force, however, that officer is entitled to qualified immunity, unless it was clearly established at the time of the incident that the officer's use of force violated the Fourth Amendment.  The qualified immunity inquiry is two-fold: (1) whether the facts that a plaintiff has shown "make out a violation of a constitutional right"; and (2) "if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  Defendants move for a new trial or judgment as a matter of law on the first prong and judgment as a matter of law on the second.

To determine whether an exercise of force is objectively reasonable under Graham, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  490 U.S. at 395.  To determine the government's interest in the use of force, the court (and the jury) should consider, in the totality of the circumstances: (1) the severity of the crime at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | | Date | November 19, 2012 |
|---|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | | |

issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest; (4) "the availability of alternative methods of capturing or detaining the suspect"; (5) the amount of time the officers had to make a decision; and (6) the "plaintiff's mental and emotional state." Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010) (citations omitted). Although the inquiry is fact-specific, it is generally not unreasonable to prevent escape using deadly force "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). Whether deadly or not, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

Next, to determine whether a right at issue was clearly established, "[t]he relevant, dispositive inquiry. . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), *abrogated on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009). "If an officer's use of force was premised on a reasonable belief that such force was lawful, the officer will be granted immunity from suit, notwithstanding the fact excessive force was deployed." Bryan v. MacPherson, 630 F.3d 805, 832 (9th Cir. 2010). There need not be "closely analogous case law to show that a right is clearly established," id. at 833, so long as "the unlawfulness [of defendant's actions] was apparent in light of preexisting law." Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir.2002). Stated otherwise, "while there may be no published cases holding similar policies constitutional, this may be due more to the obviousness of the illegality than the novelty of the legal issue." Id. In making this determination, the Court "draw[s] all reasonable factual inferences in favor of the jury verdict," although the ultimate legal determination is reserved for the court. Muehler v. Mena, 544 U.S. 93, 98 n. 1 (2005).

### (a)      Excessive force claim against Officer Houlihan

Defendants argue that Officer Houlihan's use of deadly force was reasonable and therefore did not violate plaintiff's Fourth Amendment rights as a matter of law. However, in light of all of the evidence adduced at trial, the Court finds that Officer Houlihan is not entitled to judgment as a matter of law, and that the jury's verdict is not against the clear weight of the evidence. On one side of the balance, defendant used the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$O$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

most intrusive type of force available to him—deadly force—by shooting plaintiff three times at close range.  See Garner, 471 U.S. at 9 ("The intrusiveness of a seizure by means of deadly force is unmatched.").  And on the other side of the balance, the government's interest here is insufficient to justify the use of deadly force against plaintiff.  First, it is undisputed that plaintiff was half-naked, yelling, and generally exhibiting unusual behavior at the time of the incident, but that at most she was guilty of disturbing the peace before encountering the officers.  After this time, the parties dispute many aspects of the incident with the officers, including the length of time between their first encountering her and shots being fired, the actions both plaintiff and defendants took before ending up in the area where the shooting occurred, and the details of how plaintiff came to swing a wooden stake at Officer Phan and strike him.  The jury, in its capacity as factfinder, was free to reject or accept the testimony of various witnesses in this regard, as the most important details of plaintiff's run-in with the police remained disputed up to and after the close of trial.  As such, the jury had ample evidence before it from which to conclude that plaintiff had not committed a serious crime before encountering the officers, and although assaulting a police officer is no doubt a serious crime, the jury could reasonably have concluded that she did not pose an immediate threat to the safety of the officers despite her erratic conduct.

Second, as the Ninth Circuit has noted, "[t]he problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense."  Bryan v. MacPherson, 630 F.3d 805, 829 (9th Cir. 2010).  Defendants themselves testified that they thought plaintiff may have been either on under the influence of drugs or a serious mental disturbance, and a jury could readily have found that their suspicions rendered defendants' approach to subduing plaintiff here unreasonable.  Third, plaintiff presented substantial evidence that defendant Houlihan had less forceful avenues available to him, including the use of a taser.  As noted, Officer Houlihan presented conflicting accounts as to the amount of time he had for deliberation before unleashing deadly force on plaintiff, and a jury was free to reject his version of the events as implausible.  A jury could reasonably have found that Houlihan had time to deliberate before utilizing deadly force, or that such force was unwarranted regardless of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

his time to deliberate.  And having witnessed the testimony, the Court sees no need to question the jury's credibility determinations implicit in its verdict.[5]

Moreover, defendant's comparison to Forrett v. Richardson, 112 F.3d 416, 420 (9th Cir. 1997), is not persuasive.  The plaintiff in Forrett had forcibly entered a residence, tied up his three victims, shot two of the victims before leaving, and then fled the scene in one of the victim's truck with several firearms and a bunker's worth of ammunition.  Id. at 418.  This information was relayed to the police by one of the victims, who then engaged in an extensive manhunt before encountering the plaintiff.  As the court found, if "there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape."  Id. at 420.  Unlike the officers in Forrett who clearly had knowledge of defendant's recent, violent criminal actions, the officers here knew nothing more about plaintiff or her recent actions than what she presented to them.  And a jury was free to reject Officer Houlihan's conclusion that he reasonably feared that plaintiff would inflict serious bodily injury on Officer Phan with the wooden stake.  Defendant did not contend, nor could he given her state of undress, that plaintiff was armed in any way other than with this wooden stake, and the evidence at trial showed that Officer Phan suffered minimal injuries as a result of plaintiff's efforts.  This is not to say that plaintiff posed no threat to the officers' safety or that of others, but that on balance, a jury could find that plaintiff did not pose the type of threat that reasonably justified the use of deadly force.

---

[5] The Court notes that in addition to the shooting and tasing, the jury could have properly considered the officers' conduct leading up to the shooting in determining the reasonableness of the officers' exercise of deadly force under the totality of the circumstances.  While it is disputed how long the officers chased plaintiff before she was cornered in the area where the shooting occurred, there is no doubt that such a pursuit occurred, and plaintiff offered evidence at trial that the officers had multiple prior opportunities to apprehend plaintiff using less than deadly force.  See Decl. of Martin Stanley, Ex. A, Depo. of Brent Houlihan 78:9–14 (testifying that the chase up until the shooting lasted maybe "15 to 20 minutes").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | | Date | November 19, 2012 |
|---|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | | |

The Court also concludes that defendant Houlihan is not entitled to qualified immunity, because his conduct did, in fact, violate clearly established law.[6]  It is undisputed here that at most, plaintiff possessed a wooden stake during part of her encounter with the officers.  Although defendant persists in characterizing the stake as a "deadly" or "dangerous" weapon, Reply at 15–17, the jury appeared to reject such a characterization in reaching its special verdict, and the Court finds no reason to depart from the jury's apparent conclusion.  If the jury had adopted defendant's version of the incident, then Officer Houlihan's use of deadly force could be justified under controlling law in light of plaintiff's wielding a "deadly weapon" herself.  However, because the jury found defendant's use of force to be unreasonable, the jury very likely concluded that the wooden stake did not pose a risk of serious bodily injury in plaintiff's hands.  Under Garner and Graham, "shooting [plaintiff] required probable cause (supported by objectively reasonable facts) to believe that [she] posed a threat of serious physical harm to themselves or to others."  Blanford v. Sacramento County, 406 F.3d 1110, 1119 (9th Cir. 2005).[7]  Other than plaintiff's use of the wooden stick and her failure to comply with

---

[6] As the Ninth Circuit has noted, the "first prong of qualified immunity. . . mirrors the substantive summary judgment decision on the merits," Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002), and therefore the Court's conclusion that defendant is not entitled to judgment as a matter of law as to the constitutionality of his actions establishes the first prong here.

[7] Defendant's comparison to the facts of Blanford v. Sacramento County, 406 F.3d 1110 (9th Cir. 2005), does nothing to advance his cause.  There, a plaintiff suffering from bipolar disorder was walking down a street carrying a Civil War-era sword—undoubtedly a deadly weapon—and upon being confronted by the police, attempted to enter a nearby residence.  Id. at 1119.  Despite being repeatedly warned that he must drop the weapon or that otherwise he would be shot, the plaintiff refused to do so, at which point the officers opened fire.  Id.  Here, the wooden stake plaintiff held could in no way be characterized as a "sword," and defendant never testified that he warned plaintiff that she risked being shot if she persisted in her actions.  Put simply, nothing in Blanford or any other decision would license Officer Houlihan to shoot plaintiff absent objective, probable cause to believe that plaintiff posed a serious threat to himself or the other officers, and the jury appeared to soundly reject any notion that such cause existed under these circumstances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

the officers' commands, defendant offered no evidence at trial that plaintiff posed a risk of serious physical harm that justified the use of deadly force, and the jury thus sided with plaintiff in finding that Officer Houlihan's belief that she posed a threat of serious physical harm was unjustified. Because the jury reasonably found that plaintiff's use of the stake did not amount to an objective threat of serious bodily injury, <u>Graham</u> and <u>Garner</u> foreclose the use of deadly force in this case.

Accordingly, defendant Houlihan's motion for a new trial or judgment as a matter of law on plaintiff's section 1983 claim is denied. Based on the jury's special verdict, defendant's actions were both unconstitutional and in violation of clearly established law.

### (b)    Excessive force claim against Officer Bezak

Defendant contends that Officer Bezak acted reasonably when he tased plaintiff after she had been shot by Officer Houlihan, contrary to the jury's verdict and the clear weight of the evidence. Defendant notes that the use of a taser on an individual qualifies as an intermediate but significant level of force, <u>see</u> <u>Bryan v. MacPherson</u>, 630 F.3d 805, 826 (2010), but argues that the government's interest justifies the use of such force here as follows.[8] First, plaintiff had already attacked a police officer at the time she was tased, a significant crime. Second, Officer Bezak believed that plaintiff posed a threat to the safety of other officers even after she had been shot multiple times, because plaintiff allegedly continued to violently struggle and the officers feared there was a risk of exposure to blood borne pathogens as well. Third and relatedly, plaintiff's continued resistance made use of the taser necessary such that she could be brought into custody and medical care could be provided to her. Mot. at 10–12.

The Court finds that the jury's verdict is not contrary to the weight of the evidence and that defendant is not entitled to judgment as a matter of law. In finding Officer

---

[8] <u>See</u> <u>Bryan</u>, 630 F.3d at 825 (noting the severe "physiological effects, the high levels of pain, and foreseeable risk of physical injury" that taser devices can cause, and finding that use of a taser "intrudes upon the victim's physiological functions and physical integrity"); <u>Matta-Ballesteros v. Henman</u>, 896 F.2d 255, 256 n. 2 (7th Cir. 1990) (noting that the taser causes "immobilization, disorientation, loss of balance, and weakness").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

Bezak liable for using excessive force under the <u>Graham</u> test, the jury must have discounted defendant's version of the facts—principally that plaintiff was so violently resisting the two officers who were attempting to subdue her, after being shot three times, that use of a taser was necessary. For example, the jury could have readily found, based on the testimony of Pamela Troumbly and Dr. Braiker, that use of a taser was unwarranted because plaintiff could not possibly have resisted in the way in which defendants claim she did after being shot. In finding malice, the jury may have also concluded that the disparaging remarks made by the officers about plaintiff demonstrated not a thoughtful decision to use appropriate force given the exigencies of the situation, but a careless disregard for plaintiff's continued well-being. Moreover, the jury may have found that given plaintiff's condition at the time, other less intrusive alternatives remained available short of tasing her. As the credibility of all the witnesses is paramount to a determination of whether Officer Bezak's use of force was reasonable under the circumstances, the Court sees no reason to disrupt the clear import of the jury's findings here. Defendant presented the same arguments and testimony at trial, and the jury clearly found them to be unavailing. Taken as a whole, the Court is unable to conclude that the jury's verdict is against the clear weight of the evidence or that defendant's actions, taken in the light most favorable to plaintiff, were not in violation of plaintiff's constitutional rights. Plaintiff's right—lying on the ground suffering from three gunshot wounds—to be free from additional forceful intrusion by the police outweighs the government's interest under the totality of these particular circumstances.

Moreover, the Court concludes that defendant Bezak is not entitled to qualified immunity, because a "a fair application of well-established legal principles" would have put defendant on notice that his conduct was unconstitutional. <u>Young v. County of Los Angeles</u>, 655 F.3d 1156, 1167 (9th Cir. 2011). Defendant argues that because key Ninth Circuit decisions regarding the constitutionality of using a taser in various situations were not decided until after Officer Bezak tased plaintiff, defendant is entitled to qualified immunity. <u>See Bryan</u>, 608 F.3d 614; <u>Brooks v. City of Seattle</u>, 599 F.3d 1018 (9th Cir. 2010) (superceded on rehearing en banc); <u>Mattos v. Agarano</u>, 661 F.3d 433 (9th Cir. 2011) (en banc) (consolidated with <u>Brooks</u> for rehearing en banc); <u>see also</u> <u>DeContreras v. City of Rialto</u>, 2012 U.S. Dist. LEXIS 138780 (C.D. Cal. Sept. 25, 2012). Defendant is no doubt correct that these cases establish the Ninth Circuit's framework for the permissible use of a taser by law enforcement going forward, and that these decisions have no bearing on defendant's qualified immunity defense in this proceeding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | | Date | November 19, 2012 |
|---|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | | |

What defendant fails to appreciate, however, is that the unique factual circumstances of this case support a finding that defendant's conduct violated plaintiff's clearly established Fourth Amendment rights, even though the Ninth Circuit opinions regarding the use of tasers post-dated defendant's conduct. None of those cases confronted the conduct at issue here, which the jury found to be so impermissible as to label it malicious or in reckless disregard of plaintiff's rights. Plaintiff was not only unarmed at the time she was tased, but she was suffering from multiple gunshot wounds inflicted by Officer Houlihan.[9] While there may have been no case in 2009 specifically holding that the use of a dart taser is unreasonable when a suspect is already suffering from multiple gunshot wounds, the Court finds that plaintiff's is the rare case where resort to general principles is sufficient to overcome a qualified immunity defense. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004) ("in an obvious case, [the Graham and Garner] standards can "clearly establish" the answer, even without a body of relevant case law"); see also Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Given plaintiff's physical incapacitation at the time she was tased, and the jury's finding of unreasonableness and malice based on its view of the disputed facts of this case, the Court concludes it was "beyond debate" at the time of incident that inflicting additional pain onto plaintiff was, at that moment, an excessive and unreasonable application of force. Cf. Nelson v. City of Davis, 685 F.3d 687 (9th Cir. 2012) (noting that even with novel methods of applying force, a court can consider whether "the type of pain inflicted is the same or greater than that caused by weapons that [the Ninth Circuit] has already recognized constitute excessive force. . . under similar circumstances"). Even applying a more minimal force than the taser at the moment when Officer Bezak tased plaintiff would likely have been unreasonable, as plaintiff could not have been in a more compromised state at the time when force was applied—and the jury appeared to find defendants' claims that she remained a significant threat to the officers' safety to be incredible.[10] Accordingly, the Court finds that Officer

---

[9] Regardless of one's characterization of the wooden stake, plaintiff no longer had possession of it at the time she was tased.

[10] If the jury had in fact accepted defendants' version of how the incident transpired, then Officer Bezak may indeed be entitled to qualified immunity. However, because the jury clearly rejected defendants' recounting of the events in question in favor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

Bezak is not entitled to qualified immunity, and that the jury's verdict is not otherwise contrary to the clear weight of the evidence or the governing law.

### 2. Negligence

To prove a claim for negligence, a plaintiff must show: "(1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Brown v. Ransweiler, 171 Cal. App. 4th 516, 534 (2009). The existence of a duty is a matter of law for a court to decide, and under California law, police officers have a duty "to use reasonable care in deciding to use and in fact using deadly force." Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1100 (2004). This standard of "objective reasonableness" under California law is the analog to the standard of reasonableness in section 1983 claims under federal law; as such, federal cases are "instructive" in deciding whether a given exertion of force is reasonable. See Brown, 171 Cal. App. 4th at 534.[11]

Defendant Houlihan argues that he is entitled to a new trial or judgment as a matter of law because he did not, under California law, act in an "objectively unreasonable" manner when he resorted to deadly force in his encounter with plaintiff. The Court disagrees. Because the reasonableness standard is essentially identical under California negligence law and section 1983, the Court finds no reason to diverge from the findings

---

of plaintiff's, the qualified immunity inquiry is limited to the facts as the jury most likely found them.

[11] The Brown court primarily analyzed the reasonableness of the police officers' actions in conjunction with the plaintiffs' battery claim, which is the most closely analogous cause of action to a federal section 1983 claim. However, the court also concluded that because the court found the defendant's use of force to be reasonable in connection with the plaintiffs' battery claim, the defendant's use of deadly force was by necessity "objectively reasonable" in relation to the plaintiffs' negligence claim. Brown, 171 Cal. App. 4th at 535. Therefore, under Brown, the Court's conclusions in regards to plaintiff's section 1983 claims are equally applicable in addressing her negligence claim. See also Young v. County of Los Angeles, 655 F.3d 1156, 1170 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

made with respect to plaintiff's section 1983 claim. Defendant's comparison to <u>Brown</u>, 171 Cal. App. 4th 516, does not persuade the Court otherwise. The plaintiff in <u>Brown</u> had driven his car up over a curb to avoid a "strong show of force" by police officers in "raid gear," and the court found that the officer who used deadly force had a reasonable fear that the plaintiff was going to run over a fellow police officer with his vehicle. Although defendant contends that he was trying to protect the life of his partner, the jury did not appear to accept defendant's testimony in finding that plaintiff did not pose the type of danger that objectively permitted the use of deadly force. Accordingly, under the totality of the circumstances, the Court finds that defendant is not entitled to judgment as a matter of law or a new trial on plaintiff's negligence claim.

### 3.      Contributory Negligence of Dr. Mashoof

Defendant posits that the jury's finding of no contributory negligence on the part of plaintiff's orthopaedic surgeon, Dr. Mashoof, is contrary to the clear weight of the evidence. Defendant suggests that plaintiff's medical expert, Dr. Braiker, provided uncontraverted expert testimony that plaintiff's operation on her arm following the shooting was unsuccessful and a complete failure. Mot. at 13. Under the authority of <u>Howard v. Owens</u>, 72 Cal. App. 4th 621, 632 (1999), defendant contends that this uncontraverted expert testimony must be accepted as conclusive on this issue, and therefore the jury's determination that Dr. Mashoof bears no contributory liability is contrary to the clear weight of the evidence.

Proposition 51 (codified at California Civil Code § 1431.2) "adopts a rule of several liability for noneconomic damages, providing that each defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." <u>Evangelatos</u>, 44 Cal. 3d at 1198.[12] Properly understood, Proposition 51 provides that "a defendant's liability for noneconomic damages cannot exceed his or her proportionate share of fault as compared with all fault responsible for the plaintiff's injuries, not merely that of defendants present

---

[12] Non-economic losses include "subjective, non-monetary losses [such as] pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." <u>Henry</u>, 160 Cal. App. 4th at 450.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

in the lawsuit." DaFonte v. Up-Right, Inc., 2 Cal. 4th 593, 603 (1992). Therefore, in any case alleging personal injury, defendants "should be allowed to introduce evidence of [third party's] negligence to limit their liability for noneconomic damages to their percentage of fault," including evidence of the alleged negligence of plaintiff's medical professionals. Henry, 160 Cal. App. 4th at 452.

The bar to demonstrating comparative fault of a medical professional is a high one: "a non-party medical doctor cannot be found comparatively at fault unless the defendant proves all of the elements of medical malpractice," a showing that generally requires expert testimony under California law. Chakalis v. Elevator Solutions, Inc., 205 Cal. App. 4th 1557, 1561 (2012). Thus defendant here must prove the following elements: "(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." Id. at 1571. In particular, causation must be proven "within a reasonable medical probability based upon competent expert testimony." Miranda v. Bomel Constr. Co., Inc., 187 Cal. App. 4th 1326, 1336 (2010).

The Court concludes that the jury's finding as to Dr. Mashoof's negligence is not contrary to the clear weight of the evidence. Defendants offered no medical expert of their own, and therefore their entire case of medical malpractice is centered around Dr. Braiker's admission that plaintiff's surgery was a "failure," in addition to their argument that Dr. Mashoof's negligence is "obvious" to the average person, without the need for expert testimony. Reply at 22. As defendant notes, "obvious" cases of medical malpractice are those where a foreign object is left in a patient's body, or where an injury occurs during surgery to a part of the body not being operated on. Plainly, neither of these situations describes plaintiff's surgical experience here. Even if Dr. Mashoof incorrectly used a screw that was too short, which therefore failed to hold plaintiff's bones in their proper position, the Court—let alone the jury—is in no position to evaluate whether this action was negligent or whether it caused plaintiff further injury "within a reasonable medical probability." Accordingly, the jury's verdict is not against the clear weight of the evidence that was available to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

### 4.    Inconsistent Jury Verdicts

Defendants argue that the jury's inconsistent special verdict entitles them to a new trial, because the verdict is "logically incompatible, thereby indicating that the jury was confused or abused its power." Mot. at 17 (quoting Hopkins v. Coen, 431 F.2d 1055, 1059 (6th Cir. 1970)). Defendant points to the jury's findings that Officer Bezak's tasing was an excessive use of force under section 1983 on the one hand, but that he was not liable for negligence under state law on the other. Because the reasonableness standard is largely the same under state and federal law, such a verdict is inconsistent. In addition, defendant notes that although the jurors did not find Officer Phan to have acted with excessive force or negligently, they did assign to him three percent of the "responsibility for plaintiff Valerie Allen's injuries," in the language of Question 5 of the special verdict form for Phase I.

"[A] court has a duty under the Seventh Amendment to harmonize a jury's seemingly inconsistent answers if a fair reading allows for it." Bains LLC v. Arco Products Co., Div. of Atl. Richfield Co., 405 F.3d 764, 771 (9th Cir. 2005). To determine whether a fair reading is available, the court must ask "not whether the verdict necessarily makes sense under any reading, but whether it can be read in light of the evidence to make sense." White v. Ford Motor Co., 312 F.3d 998, 1005 (9th Cir. 2002). "[T]he jury verdict must be upheld unless it is impossible to harmonize the answers under a fair reading." Los Angeles Nut House v. Holiday Hardware Corp., 825 F.2d 1351, 1354 (9th Cir. 1987).

The Court finds that neither inconsistency noted above entitles defendants to a new trial. With regards to Officer Phan, the language of Question 5 of the special verdict form is paramount—the question refers only to his comparative "responsibility" for plaintiff's injuries, and says nothing about Officer Phan's negligence or legal fault. A significant part of plaintiff's case revolved around all of the officers' responsibility for chasing plaintiff throughout the neighborhood, in addition to Officer Phan's decision to approach plaintiff, rather than draw his taser as Officer Houlihan allegedly instructed him. In light of this and other evidence presented at trial, a jury could have reasonably found Officer Phan to be at least in part responsible for plaintiff's injuries, even if the jury ultimately concluded that he bore no legal culpability. This is not only a "fair reading" of the jury's verdict but the most sensible one. Second, although generally the standards of objective reasonableness are the same for negligence and section 1983

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

claims, the jury here found that Officer Bezak acted willfully and maliciously when he tased plaintif, after she was shot by Officer Houlihan. Fairly read, the jury may have reasonably decided that Officer Bezak did not act negligently at all, because the jury found that his decision to use force was instead intentional and malicious. Such a reading of the jury's verdict harmonizes the purported inconsistencies in the jury's verdict as to Officer Bezak, and therefore a new trial is not warranted.

### 5.    Damages

Finally, the Court finds no reason to upset the jury's compensatory or punitive damage awards. First, under BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003), a court may set aside a punitive damages award as excessive if it is in violation of the Due Process Clause. The relevant factors for making this determination include: "(1) the degree of reprehensibility, (2) the disparity between the harm suffered and the punitive damages award, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." Bains LLC v. Arco Prods. Co., 405 F.3d 764, 775 (9th Cir. 2005). Under this test, the Court cannot conclude, as a matter of law, that the jury's award of punitive damages is misplaced. The jury had before it the proper instruction on punitive damages, and based on the evidence with which they were presented, a reasonable jury could find that the evidence justified an award of punitive damages in this case. The jury's award of $18,500 in total punitive damages was minimal in comparison to the actual harm plaintiff suffered. Defendants Houlihan and Bezak contend that they demonstrated "remarkable restraint" throughout the encounter, and that neither of them harbored any "ill will" or "spite," Mot. at 20, but the jury apparently rejected these same arguments that defendants made during trial.[13] Defendant Houlihan again presses his argument that he was acting to "save Officer Phan's life when he shot plaintiff," but as discussed previously, the jury clearly found Officer Houlihan's rationale to be not only unreasonable but apparently not believable as well. Accordingly,

---

[13] See Mendez v. County of San Bernardino, 540 F.3d 1109, 1120–21 (9th Cir. 2008) ("Although determining the degree of reprehensibility ultimately involves a legal conclusion, we must accept the underlying facts as found by the jury and the district court, because district courts have a somewhat superior vantage in assessing the defendant's conduct.") (quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

the Court denies defendant's motion for a new trial or judgment as a matter of law on the issue of punitive damages.

In addition, defendant's arguments in regard to compensatory damages are the same ones defendant made at trial, which the jury implicitly rejected in awarding plaintiff the damages award that it did. In short, defendant focuses on the fact that any injury to plaintiff's arm can be "remedied" by a subsequent operation, and the fact that plaintiff "brought [this] upon herself." Mot. at 22–24. In doing so, defendants ignore the ample evidence of pain and suffering that plaintiff presented at trial, which alone could justify the jury's award of three million dollars in noneconomic damages. The jury's finding of damages should be upheld "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996) *aff'd on other grounds by* 526 U.S. 687 (1999). In addition, "[w]hen a jury returns a general verdict for the plaintiff after hearing alternative calculations of damages," a court should uphold the award "if there is substantial evidence in the record as to any one calculation to support the award." Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1373 (9th Cir. 1987). With due deference to the jury's findings, the Court finds that plaintiff was awarded a reasonable amount of damages for pain and suffering—not an amount that is "grossly excessive or monstrous." Accordingly, the Court denies defendants' motion for a new trial on the issue of damages.

**B.    Motion for Attorneys' Fees**

Plaintiff's counsel seek attorneys' fees in the amount of $833,677.50 for their work in preparing and litigating this case and an additional $20,036.41 for out-of-pocket expenses not covered by Federal Rule of Civil Procedure 54(b). The Court agrees that plaintiff's counsel are entitled to fees pursuant to 42 U.S.C. § 1988 for their work in obtaining a substantial judgment on plaintiff's behalf. The starting point for determining the amount of fees properly awarded to plaintiff's counsel is the lodestar amount, or the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," as discussed below. Hensley, 461 U.S. at 433.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

### 1.    Reasonable Hours

Plaintiff's counsel argue that the hours they seek are reasonable and directly contributed to plaintiff's success in this litigation.  Plaintiff claims that the case involved a significant expenditure of time and effort given the numerous witnesses who were deposed and presented at trial, the extensive discovery to review, and the extensive trial preparation including opening and closing statements, jury instructions, motions in limine, and verdict forms.  Attorneys' Fee Mot. at 8.  Plaintiff's counsel also had to undertake voluminous legal research related to issues in this case.

Attorney Martin Stanley, the lead attorney on this case, seeks a fee award for the 652.6 hours of time he spent over the course of three years on plaintiff's case.  Attorney Gilbert Geilim, co-counsel in this case and plaintiff's criminal defense attorney, seeks 489.8 hours related to his work conducting legal research, preparing for and attending depositions, drafting pleading and discovery documents, and developing trial strategy. Jeffrey Lamb, an associate of Mr. Stanley, spent more than 369.5 hours litigating this case, spent primarily on legal research, drafting pleadings, discovery documents, motions, and other pre-trial documents.  In total, plaintiff's counsel seek fees for 1,511.9 hours of attorney time.  Plaintiff notes that defendant never made an offer to settle the case, pursuing an "aggressive" litigation strategy through their experienced counsel from the City Attorney's office.  In addition, plaintiff's counsel are not seeking compensation for hours expended by office staff, paralegals, or law clerks, for most of counsel's telephone calls regarding the case, or for the dozens of hours on countless occasions spent thinking about the issues in this case.  See Decl. Martin Stanley In Support of Motion for Attorneys' Fees ¶ 14.

Defendant objects to plaintiff's hours tabulation on a number of grounds. Defendant characterizes this case as involving "relatively simple" trial preparation, because there were no complex or novel issues of procedure or law, and the trial itself only lasted four days.  In addition, no substantial pretrial motions were filed, and therefore most of plaintiff's counsel's time was spent conducting discovery.

Specifically, defendant contends that plaintiff's counsel's evidence of their hours is insufficient to support a fee award of the magnitude that plaintiff is seeking.  First, most of the billing entries submitted by plaintiff's counsel refer to "emails" for various tasks, the entries themselves distinguished (most of the time) by the subject of the email.  While

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

many of these emails were billed for less than half an hour, a significant number of "emails" were billed for four or five or a greater number of hours.  Defendant contends that this type of "block billing," where it is difficult to discern how much of the billed time was appropriate, warrants a reduction in plaintiff's total fee award.

Second, defendants note that plaintiff's hours reflect a significant amount of time spent on internal conferencing and other purportedly duplicative and excessive billing, including lawyers performing secretarial work.  See Decl. of Richard Arias in Support of Defs.' Opp'n to Pl.'s Fee Mot., Exs. A & B.  This includes instances where multiple attorneys billed their time for attending depositions or attending trial while the jury was deliberating; an experienced litigator would not need such assistance, defendants contend.  See id. Ex. C.  Third, on certain dates, plaintiff's counsel billed greater than 24 hours of time, and on other dates, over sixteen hours of time.  Opp'n at 11.  These instances reflect poorly on the overall accuracy of the billing records, defendants opine, and justify an across the board reduction in hours.  Fourth, defendants suggest that a number of hours billed by Mr. Geilim appear to correspond to time he spent working on plaintiff's criminal defense; these hours would obviously be excluded from the fee award in plaintiff's civil case.  Finally, because plaintiffs' ex parte motion to strike and motion to reopen expert discovery or exclude defendants' witnesses were a product of plaintiff's own "dilatory" case management, defendants argue that any hours related to these motions should be excluded from consideration as well.  See Arias Decl. In Opp'n, Ex. D.

The Court agrees that plaintiff's counsel's time entries are insufficient to justify the fee award that they seek.  First, counsel's block billing and otherwise vague time entries provide little insight into how and why they spent time performing various tasks.  Many entries are no more descriptive than noting that the attorneys spent time associated with this case.  As these hours ought to "roughly approximate" what a paying client would have paid for counsel's services, see Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010), counsel's time entries should also roughly approximate what a paying client would demand to justify the hours that he or she has been billed.  Moreover, entries that lack a date altogether are insufficient, generally speaking, to justify a fee award; an inference of post-hoc speculation as to the hours actually expended on these tasks is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

unavoidable without proper time and date notations for some of counsel's time entries.[14] The Court also notes that a majority of time entries appear to be for internal emails regarding various aspects of legal research or discovery. Counsel appear to have billed as an "email" all the time spent conducting legal research on a given topic, for example, and presumably were not composing and reading a single email this entire time.[15] But this is only the Court's speculation, because it is difficult to parse plaintiff's counsel's hours for reasonableness. A reduction based on poorly documented time entries is thus appropriate, because "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). Counsel also contend that certain days where he billed greater than twenty-four hours is not unreasonable, because their billing practices reflect the date the job was completed or "filed," not when the work necessarily took place. Pls.' Reply at 6. While the Court need not quibble with the merits of such a time-keeping practice, it is problematic insofar as the Court cannot discern what hours on what dates were reasonably expended on this litigation.[16]

In addition, there appears to be some level of "unnecessarily duplicative work," for which it is appropriate to reduce the total number of hours claimed by plaintiff's counsel. Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). Given Stanley's experience as a trial lawyer in "significant large damage personal injury cases," some of

---

[14] Stanley Decl. Ex. A (entry for 4/4/12, "E-mail MLS to JRL - yeah I agree with all of that," for 3.3 hours of total attorney time).

[15] See, e.g., Stanley Decl. Ex. A (entry for 3/28/12, "E-mail MLS re: val allen cases to look at," for 11.2 hours of total attorney time; entry for 9/3/12, "E-mail MLS, Westlaw, re: intervening cause and val allen," for 8.7 hours of total attorney time).

[16] In addition, the Court is concerned that some of Geilim's time entries may be related to his work on plaintiff's criminal defense, for which a fee award may not be sought in this litigation. The Court need not inquire as to what sort of lien arrangement Stanley and Geilim had related to plaintiff's criminal defense—what matters is that Geilim may only justify a fee award in plaintiff's civil case by work actually and reasonably performed for her civil case. However, to what extent Geilim did bill for time spent on the criminal matter, if at all, is unclear from the records before the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

〇

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

the work did not require the equivalent of co-lead counsel staffing. See Welch, 480 F.3d at 949. This includes a significant amount of time spent in intra-office conferencing, which again given counsel's experience at least some of this time appears to be unwarranted. See id. (holding that the trial court "reasonably reduced the hours billed for intra-office conferences" without a "persuasive justification" for such conferencing). Plaintiff's counsel argues that this was a "difficult and daunting case" to try, but the Court does note that the trial itself took only four days, with a limited number of witnesses involving a single incident. None of this should be read to diminish counsel's success in this litigation, which resulted in a substantial jury verdict for their client, but at bottom this case was a relatively straightforward one of excessive force, albeit a difficult case to win. Accordingly, for all of the foregoing reasons, the Court finds plaintiff's counsel's hours should be reduced as follows: twenty percent for Stanley, who served as lead counsel throughout this litigation; thirty percent for Geilim; and twenty-five percent for Lamb.

### 2. Reasonable Rates

In determining a reasonable hourly rate, a court should look to the prevailing market rates in the relevant legal community. Perdue, 130 S. Ct. at 1672. By multiplying this rate by the number of hours expended on the litigation, the fee award will "roughly approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Id. In determining a reasonable hourly rate, a district court should consider "the experience, skill, and reputation of the attorney requesting fees." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986); see also Moreno v. City of Sacramento, 534 F.3d 1106, 1114 (9th Cir. 2008) (factors to consider include the novelty and difficulty of the issues, the experience of counsel, and fee awards in similar cases). In addition, "contingency cannot be used to justify a fee enhancement or an inflated hourly rate" above the prevailing market rate for paying clients. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 947 (9th Cir. 2007) (citations omitted).

Plaintiff submits that Mr. Stanley is entitled to an hourly rate of $675, Mr. Geilim $550 per hour, and Mr. Lamb $285 per hour. Stanley notes that he has won numerous six and seven figure jury verdicts over the course of his career, which began in 1982, and has significant experience trying wrongful death and personal injury cases in state and federal court. Stanley mentions that "civil rights" cases are part of his law practice, but does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | | Date | November 19, 2012 |
|---|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | | |

point the Court's attention to any particular cases or trials. He also states that his law clerk, Mark Bringardner, helped on the case as well. Stanley believes the requested hourly rate is justified because plaintiff has a retainer agreement whereby she has to pay 40% of the total recovery as her fee, and therefore "it is not fair to cause her to have to bear the attorneys' fees in this case given the defendants unjust conduct." Decl. of Martin Stanley ¶ 15. Stanley also offers two declarations from prominent civil rights practitioners that were submitted in a previous case before this Court, <u>Martha Rauda, et al. v. City of Los Angeles</u>, No. 08-cv-2128, as justifying an hourly rate of over $600 per hour for the attorneys in *that* case. Pls.' Request for Judicial Notice ("RJN") Exs. 1, 2.[17] He further notes that he previously received an hourly rate of $500 when he last handled a case on an hourly fee basis. Stanley Decl. ¶ 13.

Lamb avers that a rate of $335 per hour is justified because this is at or below the rate charged by attorneys of similar experience and skill in the Central District of California. Decl. of Jeffrey Lamb ¶ 9. He notes that he has practiced law for almost four years, serving as second chair at various trials and cross-examining witnesses as well. Geilim states that an hourly rate of $550 is appropriate, given his twenty-seven years of law practice and experience trying eight civil rights cases before this one. He had primary responsibility for handling plaintiff's criminal defense, in addition to document review, legal research, attending depositions, preparing and copying exhibits, meeting with witnesses, and so forth. He also repeats many of the same justifications for his hourly rate that Stanley provided for his, such as plaintiff's forty-percent contingency fee arrangement. <u>See</u> Decl. of Gilbert Geilim.

Defendants object to these requested hourly rates as excessive, and submit two recent orders from the Central District as exemplars of the prevailing hourly rate that should be used in this litigation. <u>See</u> Defs.' RJN In Support of Opp'n to Pl.'s Fee Motion Exs. 1, 2.[18] Defendants suggest that Stanley provides no documentation to support his

---

[17] The Court GRANTS plaintiff's request for judicial notice of these declarations. Federal Rule of Civil Procedure 201.

[18] The Court GRANTS defendant's request for judicial notice of these court orders. The Court notes, however, that <u>Chaudhry v. City of Los Angeles</u>, No. 09-cv-1592 is currently on appeal to the Ninth Circuit and is thus of questionable utility to this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

rate request, other than his statement that he previously received $500 per hour for non-contingency work. Moreover, defendants argue that plaintiff's counsel's arrangement with their client should not affect their entitlement to fees under the lodestar method. Defendants object to Lamb and Geilim's hourly rates as lacking in foundation, because their request fails to provide any support for their requested rate, as no previous fee awards are disclosed.

The Court finds that a reduction in plaintiff's counsel's requested rates is appropriate, as plaintiff's counsel have failed to adequately justify their claimed hourly rates. The declarations submitted by experienced civil rights practitioners in the Rauda litigation do assist the Court in establishing what a reasonable rate may be in this District, but these declarations fail to establish why counsel presently before this Court should be entitled to any particular hourly rate. None of the plaintiff's counsel took part in the Rauda litigation. Lacking any independent assessment of plaintiff's counsel's proposed rates in the form of a declaration or otherwise, the Court cannot find that plaintiff's counsel are entitled to the rates they have requested. Moreover, plaintiff's counsel is incorrect that such a "contingency factor" justifies a greater fee award; to the extent their requested hourly rates are based on such a factor, this is impermissible. Welch, 408 F.3d at 948. Considering the skill counsel demonstrated at trial, in their written submissions, and their overall success in representing their client, the Court finds that the following rates are appropriate: $575 per hour for Stanley; $425 per hour for Geilim; $275 per hour for Lamb.

### 3.    Other Factors Supporting Further Adjustment

Defendants argue that the lodestar should be adjusted based on a number of factors, including the limited novelty and difficulty of the questions involved, the limited level of skill required to try this case, no adequate foundation for any of counsel's hourly fee requests, and because the results obtained were *sui generis* at best and will not confer a substantial public benefit. The Court disagrees, and finds that the lodestar amount provides the appropriate fee award in this case with the aforementioned adjustments to the amount claimed by plaintiff. Plaintiff's counsel obtained a substantial jury verdict for their client in the face of zealous and experienced advocacy on behalf of defendants, and therefore no downward reduction in the lodestar amount is appropriate. Plaintiff does not seriously contend that an upwards departure is appropriate either, and the Court finds that such a departure is unwarranted regardless. This is not the "rare" or "exceptional" case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4695-CAS (RCx) | Date | November 19, 2012 |
|----------|----------------------|------|-------------------|
| Title | VALERIE ALLEN V. CITY OF LOS ANGELES, ET AL. | | |

that warrants departure from the lodestar amount.  <u>Perdue</u>, 130 S. Ct. at 1672; <u>Van Gerwen</u>, 214 F.3d at 1045.

Accordingly, the Court awards attorneys' fees as follows:

| | HOURS | RATE | TOTAL |
|--|-------|------|-------|
| M. Stanley | 522.1 | $575 /hr | $ 300,196.00 |
| G. Geilim | 342.9 | $425 /hr | $ 145,715.50 |
| J. Lamb | 277.1 | $275 /hr | $ 76,209.38 |
| **TOTAL** | 1142.1 | | $ 522,120.88 |

These amounts include time reasonably expended on this fee motion.

### 4. Expenses

Plaintiff has withdrawn her request for expert fees and therefore the Court need not address this request.  The Court finds that plaintiff's other expenses not recoverable under Fed. R. Civ. P. 54(b) and Local Rule 54—for a jury consultant and other out-of-pocket litigation costs—are reasonable and appropriate under the circumstances.

## V.    CONCLUSION

In accordance with the foregoing, defendant's motion for a new trial or judgment as a matter of law is hereby DENIED in its entirety.  Plaintiff's motion for attorneys' fees is GRANTED in part an DENIED in part; the Court awards plaintiff $522,120.88 in attorneys' fees and costs in the amount of $20,036.41, for a **total award of  $542,157.29**.

IT IS SO ORDERED.

| | 00 | : | 06 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |